<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

---

DOUGLAS OWENS,                  :
                                :
              Plaintiff,        :          Civil No. 12-3365 (RBK)
                                :
         v.                     :
                                :
ABIGAIL LOPEZ DE LASALLE,       :          **OPINION**
M.D., et al.,                   :
                                :
              Defendants.       :
                                :

---

**APPEARANCES:**

    DOUGLAS OWENS, Plaintiff <u>pro</u> <u>se</u>
    # 51716-056
    FCI Fort Dix
    P.O. Box 2000
    Fort Dix, New Jersey 08640

**KUGLER**, District Judge

    Plaintiff, Douglas Owens, a federal inmate confined at the
FCI Fort Dix in Fort Dix, New Jersey, at the time he filed this
Complaint, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u>.  Based
on his affidavit of indigence, the Court will grant plaintiff's
application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> ("IFP") pursuant to 28
U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file
the Complaint.

    At this time, the Court must review the Complaint, pursuant
to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether it
should be dismissed as frivolous or malicious, for failure to

state a claim upon which relief may be granted, or because it

seeks monetary relief from a defendant who is immune from such

relief.  For the reasons set forth below, the Court concludes

that the Complaint should be dismissed.

## I.   BACKGROUND

Plaintiff, Douglas Owens ("Plaintiff"), brings this civil

action, pursuant to Bivens v. Six Unknown Named Agents of Fed.

Bureau of Narcotics, 403 U.S. 388 (1971)[1] and 28 U.S.C. § 1331,

against the following defendants: Abigail Lopez De Lasalle, M.D.,

Clinical Director at FCI Fort Dix; Donna Zickefoose, Warden at

FCI Fort Dix; and John Does 1-100.  (Complaint, Caption, ¶¶ 4b-

d.)  The following factual allegations are taken from the

Complaint, and are accepted for purposes of this screening only.

The Court has made no findings as to the veracity of Plaintiff's

allegations.

Plaintiff alleges that, on June 15, 2010, he twisted his

ankle stepping in a pot hole on his return from the evening meal.

Because the Medical Department was closed for the day, Plaintiff

returned to his room.  The next day, on June 16, 2010, during the

---

[1]  In Bivens, the Supreme Court held that a violation of the
Fourth Amendment by a federal agent acting under color of his
authority gives rise to a cause of action against that agent,
individually, for damages.  The Supreme Court has also implied
damages remedies directly under the Eighth Amendment, see Carlson
v. Green, 446 U.S. 14 (1980), and under the equal protection
component of the Fifth Amendment's Due Process Clause, see Davis
v. Passman, 442 U.S. 228 (1979).

morning insulin line,[2] Plaintiff told EMT Wilk that he was experiencing pain while walking.  EMT Wilk advised Plaintiff to go to his morning meal and return to see him afterwards. Plaintiff returned to EMT Wilk after breakfast and was told that since he was ambulatory, no treatment was required.  When Plaintiff later attempted to go to his midday meal, however, he could not put any weight on his right leg.  He was carried from his room and a wheelchair was secured for him.  Plaintiff was then taken to EMT Wilk for an examination.  Crutches were issued to Plaintiff and x-rays were ordered.

The next day, an x-ray of Plaintiff's right ankle showed "[a]cute to subacute nondisplaced (and possibly incomplete) fracture of the posteromedial tibia ... . [and] a large amount of soft tissue swelling."  (Compl., pg. 2 and Exhibit B-1.)  A cast was applied to Plaintiff's right lower leg, an orthopedic examination was requested, and Motrin was prescribed to Plaintiff.  Plaintiff alleges that EMT Wilk applied the cast too tightly.  (Id., pg. 2.)

Several days later, on June 23, 2010, Plaintiff noticed that his right toes were red and swollen.  During his morning insulin line, Plaintiff showed his toes to EMT Wilk, who instructed Plaintiff to return to Medical after his morning meal.  The cast

_____

[2]  Plaintiff has been diagnosed with Diabetes mellitus, type I.  (Complaint at Exhibit K-3.)

was removed, Plaintiff's foot was cleaned, and an antibiotic ointment was applied.  A splint also was applied to the right leg and foot.  A follow-up consultation was scheduled for Plaintiff to be examined by Dr. Patel, and Bactrim was prescribed for the infection.  (Id., pp. 2-3, Ex. C-1.)  Plaintiff returned each day for a bandage change, and on June 25, 2010, Defendant Dr. Lopez was called to examine Plaintiff's foot.  Upon Dr. Lopez's examination, Plaintiff was referred and admitted to St. Francis Medical Center in Trenton, New Jersey, for treatment of a staph infection.  (Id., pp. 2-3.)

Plaintiff remained at St. Francis for 10 days for treatment of cellulitis and wound infection with antibiotics.  Hospital discharge summary records show a surgical consultation and treatment plan, which noted that Plaintiff was found to have a nondisplaced fracture of the distal tibia in the metaphysis.  The summary also noted that callus had formed around the fracture, and it was determined that the condition was chronic and at least three to four weeks old.  Further, "[i]t was recommended that the patient remain in a splint till the wounds were improved.  The plan was to place the patient in a short leg cast once the wounds were stabilized.  Unfortunately, the patient was discharged prior to this being performed."  (Id., pg. 4, Ex. F-1.)

Plaintiff was discharged from St. Francis and returned to FCI Fort Dix on June 29, 2010.  He had been placed in the same

splint and was instructed to wait for Medical to review his discharge instructions with him.  After waiting more than one hour, Plaintiff was told that he would have to return in the morning.  He was driven back to his unit without any crutches provided to him for ambulation.  Plaintiff alleges that, later that same evening as he was stepping into the shower, Plaintiff heard a "crack" and felt a sharp pain in his leg.  He also noticed a change in the appearance of his right leg and ankle. (Id., pg. 4, Exs. F-1, F-2.)

Plaintiff reported the incident to Medical the next morning when he picked up his crutches.  A subsequent x-ray on July 6, 2010, revealed a "significant angulation" of his distal right tibia.  Dr. Patel saw Plaintiff that same day and conferred with Lawrence Orthopedics to discuss a schedule for an open reduction and internal fixation.  (Id., pp. 4-5, Ex. F-2.)

Plaintiff was re-admitted to St. Francis Medical Center on July 8, 2010, where he underwent open reduction and internal fixation of the distal tibia fracture.  Summary of the procedure indicates that:

> ... A good reduction was obtained with correction of the deformity.  The fracture was stabilized with plate fixation. The fibula was stable at the conclusion of tibia fixation and, therefore, was not fixed.  It was felt that additional fixation was not necessary and that it would increase his risk of infection with two incisions in the right lower extremity in a poorly controlled diabetic.

5

(Id., pg. 5, Ex. F-2.)  Plaintiff alleges that "although the surgeons supposedly corrected his deformity, the [Plaintiff's] right leg was still deformed, leaving him unable to walk without a limp or pain."  Plaintiff also complains that he suffers a loss of feeling in his right foot and is unable to navigate stairs. Plaintiff points to an August 4, 2010 radiology report that notes a "mild angulation."  (Id., pp. 5-6, Ex. H.)

Plaintiff was examined by an orthopedic surgeon on August 5, 2010, at which time a short leg cast was placed on his right leg. An eight-week follow-up examination was requested.  On October 7, 2010, an x-ray was taken which reported no "significant changes." (Id., pg. 6, Ex. J.)  On October 13, 2010, Plaintiff was examined by Mid-Level Practitioner Vincente Elias for swelling of his limb and right foot.  (Id., pg. 6, Ex. D.)  Plaintiff again was examined on December 20, 2010, by Dr. Patel, his primary care physician, for Plaintiff's six-month chronic care appointment. Dr. Patel's notes document that Plaintiff complained of "mild pain above the ankle in front of the leg" and numbness in his toes.  (Id., pg. 7, Ex. K.)  Plaintiff was examined by the orthopedic surgeon on January 27, 2011, March 24, 2011 and May 26, 2011.

Plaintiff asserts that he has been denied adequate and necessary medical care in violation of his Eighth Amendment right against cruel and unusual punishment.  He complains that he has

an obvious physical deformity in his leg that causes him pain, and renders him unable to walk without limping.  (Id., pg. 7.) He alleges that the first wrongful act of defendants occurred when his fracture was mis-diagnosed as a minor injury and a cast was placed too tightly on his leg, causing sores that resulted in a staph infection.  He next alleges that he was wrongfully discharged from the hospital, against medical advice, before the recommended orthopedic surgery was to be performed.  Plaintiff presumes that Defendant Dr. Lopez was responsible for the premature discharge.  (Id., PP. 10-11.)

Plaintiff next alleges that the second act of deliberate indifference to his medical needs occurred after his discharge from the hospital when he was returned to his unit without crutches or a wheelchair for one day.  The same day Plaintiff was returned to prison, he went to take a shower in the evening and further exacerbated his fracture.  (Id., pg. 11.)

Plaintiff alleges that the third act of deliberate indifference occurred when his eight-week follow-up orthopedic exam was not scheduled until January 27, 2011, almost six months after his examination by the orthopedic surgeon on August 5, 2010, when the request for the eight-week follow-up was made.  No further treatment was planned on Plaintiff's deformed leg after his last orthopedic examination on May 26, 2011.  (Id., pp. 12-13.)

Finally, Plaintiff alleges that Defendant Warden Zickefoose's responses to Plaintiff's administrative remedies regarding medical notations that Plaintiff denied being in pain are "blatantly false."  (Id., pp. 13-14.)

Plaintiff alleges that he has exhausted his administrative remedies before filing this action for relief.  He attaches the remedy forms and responses to his Complaint.  Plaintiff's first administrative remedy was filed on June 7, 2011, requesting "necessary medical care for an injury to [his] lower right tibia and right ankle."  (Id., Ex. L-1, L-2.)  Warden Zickefoose responded on June 20, 2011, as follows:

> A review of your medical record reveals on June 16, 2010, you were seen for an injury assessment in which you reported that you had twisted your ankle on the compound.  An x-ray was requested, crutches were issued and you were instructed to avoid weight-bearing on your right leg.  On June 17, 2010 you were seen for follow-up due to an abnormal x-ray, which indicated a nondisplaced (possibly incomplete) fracture of the posteromedial tibia.  A cast was applied, a referral to the Orthopedic Surgeon was made, and you were issued crutches and Motrin for pain.  On June 23, 2010, staff observed that you had open sores with swellings at the end of your foot and toes.  You denied any pain and said you were not aware of the blisters of your foot.  Your cast was removed, your foot was cleaned and antibiotic ointment was applied.  A splint was put in place and you were prescribed Bactrim.  You were advised to use crutches and avoid weight bearing on your right foot until seen by the Orthopedic Surgeon.
>
> On June 25, 2010, you were seen by the Physician and sent to the Emergency Room for IV antibiotic treatment due to cellulitis of the right lower extremity.  On July 6, 2010, you were seen at Health Services upon return to the institution.  It was noted that a posterior splint was applied at the hospital, and you were prescribed Motrin.  You reported you had been putting weight on the leg and were

8

not using crutches all the time.  You also stated Motrin
assisted with your pain control.  A wheelchair was issued to
you and you were instructed not to put weight on your right
ankle.  On that same date, you were witnessed by staff
walking with crutches, but putting weight on your right leg.

On July 12, 2010, you were discharged from the hospital
after surgical repair of your right tibia.  On August 5,
2010, you were seen by the Orthopedic Surgeon as a follow-
up.  After review of the x-ray, you were placed in a short-
leg cast and were continued in the wheelchair with
instructions to not put weight on your right leg.  On
October 13, 2010, you were seen for swelling of the right
foot and toes.  You were using only one crutch and applying
full body weight against medical advice.  There was only
mild swelling, and you were instructed to report to Sick
Call as needed, or if your condition worsened.  On January
27, 2011, you were evaluated by the Orthopedic Surgeon who
determined you had a healed fracture.  He advised you to
increase weight-bearing.  On February 11, 2011, you were
seen for follow-up and denied being in pain.  On March 2,
2011, you were seen at Sick Call to renew your first floor
pass and again you denied having pain in your right foot.
You were seen again by the Orthopedic Surgeon on March 24
and May 26.  You did not report any pain or issues on those
occasions.  There is also no record of you reporting to Sick
Call for any issues with pain.  You have been properly
treated for your fracture, and should follow medical staff's
advice with regard to care of your right leg.  Accordingly,
your request is denied.

(Id., Ex L-3, L-4.)

    Plaintiff filed an administrative appeal from the Warden's

decision on July 1, 2011.  (Id., Ex. M-1.)  The Regional Director

denied Plaintiff's appeal on August 4, 2011, noting that

    A review of your appeal reveals the Warden detailed the
    medical care you are receiving.  On July 19, 2011, you were
    re-evaluated by the contract Orthopedic Surgeon who noticed
    a healed fracture and recommended periodic wound checks.
    Medical staff advise you are receiving appropriate medical
    treatment and continue to have access to sick call for your
    concerns.  Accordingly, your appeal is denied.

(Id., Ex. M-2.)   Plaintiff filed a Central Office Administrative

Remedy Appeal on August 16, 2011.   (Id., Ex. N-1.)   Plaintiff

states that he did not receive a response from the Central

Office, but pursuant to 28 C.F.R. § 542.18, he may consider his

administrative appeal denied.   (Id., pg. 8.)

Plaintiff seeks to have surgery performed to correct the

deformity in his right leg.   He also asks for compensatory and

punitive damages in the amount of $ 15 million.   (Complaint at §

7, Relief.)

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-

134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996),

requires a district court to review a complaint in a civil action

in which a prisoner is proceeding in forma pauperis or seeks

redress against a governmental employee or entity.   The Court is

required to identify cognizable claims and to sua sponte dismiss

any claim that is frivolous, malicious, fails to state a claim

upon which relief may be granted, or seeks monetary relief from a

defendant who is immune from such relief.   28 U.S.C. §§

1915(e)(2)(B) and 1915A.   This action is subject to sua sponte

screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) and

§ 1915A.

In determining the sufficiency of a pro se complaint, the

Court must be mindful to construe it liberally in favor of the

plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)
(following Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also
United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

The Supreme Court refined the standard for summary dismissal
of a complaint that fails to state a claim in Ashcroft v. Iqbal,
556 U.S. 662 (2009).  The Court examined Rule 8(a)(2) of the
Federal Rules of Civil Procedure which provides that a complaint
must contain "a short and plain statement of the claim showing
that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).
Citing its opinion in Bell Atlantic Corp. v. Twombly, 550 U.S.
544 (2007) for the proposition that "[a] pleading that offers
'labels and conclusions' or 'a formulaic recitation of the
elements of a cause of action will not do,'"  Iqbal, 556 U.S. at
678 (quoting Twombly, 550 U.S. at 555), the Supreme Court held
that, to prevent a summary dismissal, a civil complaint must now
allege "sufficient factual matter" to show that the claim is
facially plausible.  This then "allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged."  Fowler v. UPMC Shadyside, 578 F.3d 203 (3d
Cir. 2009)(citing Iqbal, 556 U.S. at 676).  The Supreme Court's
ruling in Iqbal emphasizes that a plaintiff must demonstrate that
the allegations of his complaint are plausible.  See id. at 678-
79; see also Twombly, 505 U.S. at 555, & n. 3; Warren Gen. Hosp.
v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011).  "A complaint must

do more than allege the plaintiff's entitlement to relief.  A

complaint has to 'show' such an entitlement with its facts."

Fowler, 578 F.3d at 211 (citing Phillips v. County of Allegheny,

515 F.3d 224, 234-35 (3d Cir. 2008).  See also Argueta v. U.S.

Immigration & Customs Enforcement, 643 F.3d 60, 73 (3d Cir.

2011); Bistrian v. Levi, 2012 WL 4335958, *8 (3d Cir. Sept. 24,

2012)(allegations that are no more than conclusions are not

entitled to the assumption of truth; a court should "look for

well-pled factual allegations, assume their veracity, and then

'determine whether they plausibly give rise to an entitlement to

relief.'")(quoting, Iqbal, 556 U.S. at 679).

### III.  ANALYSIS

"The Eighth Amendment, which applies to the states by virtue

of the Fourteenth Amendment, prohibits" punishments that are

"cruel and unusual."  Jackson v. Danberg, 594 F.3d 210, 216 (3d

Cir. 2010).  An Eighth Amendment claim includes an objective

component, whether the deprivation of a basic human need is

sufficiently serious, and a subjective component, whether the

officials acted with a sufficiently culpable state of mind.

Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective

component is "contextual and responsive to 'contemporary

standards of decency.'"  Hudson v. McMillian, 503 U.S. 1, 8

(1992)(quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)).  The

subjective component "follows from the principle that 'only the

unnecessary and wanton infliction of pain implicates the Eighth

Amendment.'"  Farmer v. Brennan, 511 U.S. 825, 834 (1994)

(quoting Wilson, 501 U.S. at 297).  "What is necessary to

establish an 'unnecessary and wanton infliction of pain,' ...

varies according to the nature of the alleged constitutional

violation."  Hudson, 503 U.S. at 5 (quoting Whitley v. Albers,

475 U.S. 312, 320 (1986)).

Where the claim is one alleging the failure to provide

medical care, as alleged by Plaintiff here, the core inquiry is

whether the defendant's actions constituted "deliberate

indifference" to an inmate's serious medical needs.  Estelle, 429

U.S. at 104.  Deliberate indifference is shown if a defendant

"intentionally den[ies] or delay[s] access to medical care or

intentionally interfere[es] with the treatment once prescribed."

Id. at 104–05.  Furthermore, deliberate indifference can be

manifested by "persistent conduct in the face of resultant pain

and risk of permanent injury."  White v. Napoleon, 897 F.2d 103,

109 (3d Cir. 1990).  Moreover, "[s]hort of absolute denial, if

necessary medical treatment is ... delayed for non-medical

reasons, a case of deliberate indifference has been made out."

Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d

326, 346 (3d Cir. 1987)(alterations in original)(internal

quotation marks and citation omitted).  A medical need is serious

if it "has been diagnosed by a physician as requiring treatment

13

or ... so obvious that a lay person would easily recognize the necessity for a doctor's attention." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotation marks and citation omitted). However, "[a]llegations of medical malpractice or mere disagreement as to the proper medical treatment are insufficient to establish a constitutional violation." Szemple v. Univ. of Med. & Dentistry, No. 11-1376, 2011 U.S.App. LEXIS 22914, at *8, 2011 WL 5562668 (3d Cir. Nov. 16, 2011)(citing Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004)).

Here, the Complaint fails to state a claim of deliberate indifference necessary to support an Eighth Amendment violation. Plaintiff provided the relevant medical records with his Complaint which evidences that Plaintiff was extensively treated for his staph infection and fracture.

At best, Plaintiff disagrees with the treatment course set forth by the medical defendants, and alleges negligence. For instance, Plaintiff complains that his cast was put on his leg too tightly, and that the fracture initially was mis-diagnosed as a minor injury. He also complains that he was discharged from the hospital too early, but offers no evidence that the discharge was prompted by any named defendant with deliberate disregard for Plaintiff's health. As noted above, such claims of disagreement in treatment, or negligence, or medical malpractice, do not rise to the level of an Eighth Amendment violation. As the Third

14

Circuit has noted "mere disagreements over medical judgment do not state Eighth Amendment claims" because there may be "several acceptable ways to treat an illness."  White, 897 F.2d at 110; see also Hodge v. United States Dep't of Justice, 372 Fed. Appx. 264, 268 (3d Cir. 2010)("disagreements ... among physicians, concerning the course of medical treatment ... do not support a claim for a violation of the Eighth Amendment."); Ham v. Greer, 269 Fed. Appx. 149, 151 (3d Cir. 2008)("Ham's primary dispute, in essence, is that he did not receive the kind or quality of treatment that he would have preferred.  This simply does not rise to the level of a violation of a constitutionally protected right.").

Plaintiff was given crutches, a wheelchair and medication to help with pain.  He was seen regularly as prescribed for periodic examination and follow-up care, and did not request or report to Sick Call on any occasion for issues with pain.  Medical staff and his Orthopedic Surgeon also reminded Plaintiff to keep weight off his right leg, which Plaintiff apparently chose to ignore at his detriment.  Thus, while this Court sympathizes with Plaintiffs medical condition and alleged deformity, it is clear that the defendants were not deliberately indifferent to his medical needs to support an Eighth Amendment violation.

IV.   CONCLUSION

Therefore, for the reasons set forth above, the Complaint will be dismissed with prejudice, in its entirety as against the named defendants, for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).   An appropriate order follows.


S/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

Dated: January 8, 2013

16